**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KASHIF AFTAB,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 07-2080 (RWR)** |
| **EMILIO T. GONZALEZ et al.,** | |
| **Defendants,** | |

**MEMORANDUM OPINION AND ORDER**

Kashif Aftab brings claims against the Director of United States Citizenship and Immigration Services ("CIS"), the Secretary of the United States Department of Homeland Security ("DHS"), the Director of the Federal Bureau of Investigation ("FBI"), and the Director of CIS' Texas Service Center ("TSC"), alleging that they have unreasonably delayed processing his application for adjustment of his status. The defendants have moved to dismiss for lack of subject matter jurisdiction, or in the alternative, to transfer venue. Because the defendants show that a transfer of venue to the Northern District of Texas is in the interest of justice, the defendants' motion to transfer will be granted.

BACKGROUND

Aftab, a resident of Houston, Texas, was the subject of an approved "immigrant petition for alien worker (Form I-140) filed on his behalf by his longtime employer[.]" (Compl. ¶ 15.)

After his immigrant petition was approved, Aftab filed an application for adjustment of status with CIS' Vermont Service Center in 2002. As directed by the Vermont Service Center, Aftab twice provided fingerprints and additional evidence regarding his birth date and employment. (Id. ¶¶ 15, 16.) CIS also sent the FBI a request for a background check on Aftab. (Id. ¶ 12.) Aftab moved to Texas in 2005 and his application was transferred to the TSC in 2007. (Id. ¶¶ 17, 18.) The TSC later asked Aftab for additional evidence and fingerprints. (Id. ¶ 20.) Aftab has contacted the TSC on multiple occasions regarding the status of his application, but he has not received a final decision. (Id. ¶ 21.) At the time this action was filed, the TSC was reviewing "employment-based adjustment of status applications filed on or before August 25, 2006," which would include Aftab's application. (Id. ¶ 19.)

Aftab alleges that the defendants have failed to adjudicate his adjustment of status application and seeks to "[c]ompel the Defendants and those acting under them to take all appropriate action to perform their duty to adjudicate the Plaintiff's adjustment of status application without further delay[.]" (Id. at 15.) He alleges that CIS has "willfully and unreasonably failed to adjudicate the Plaintiff's application for adjustment of status for over five years, thereby depriving the Plaintiff of his rights under 8 U.S.C. § 1151(a)(2)." (Id. ¶ 32.)

Three of the defendants are located in the District of Columbia while the Director of CIS' TSC is located in the Northern District of Texas. The defendants have moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss or to transfer the action to the Northern District of Texas under 28 U.S.C. § 1404(a). (Defs.' Mem. of Law in Supp. of Mot. to Dismiss or in the Alternative to Transfer ("Defs.' Mem.") at 1.)

DISCUSSION

I. ADDRESSING VENUE BEFORE JURISDICTION

Although the defendants have moved to dismiss for lack of subject matter jurisdiction, the motion to transfer venue under § 1404 may be addressed first. In Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184 (2007), the Supreme Court held that the question of forum non conveniens can be addressed before considering whether subject matter jurisdiction exists. Id. at 1188 (stating that "a district court has discretion to respond at once to a defendant's *forum non conveniens* plea, and need not take up first any other threshold objection[,]" including subject matter jurisdiction or personal jurisdiction). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Id. at 1192 (stating that a forum non conveniens

dismissal "denies audience to a case on the merits" and "is a determination that the merits should be adjudicated elsewhere" (internal quotation marks and brackets omitted)). "Sinochem thus firmly establishes that certain non-merits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" Pub. Citizen v. U.S. Dist. Court for District of Columbia, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem, 127 S. Ct. at 1191-92).

While the defendants do not move for dismissal based on forum non conveniens as happened in Sinochem, they do seek a transfer of the case to the Northern District of Texas under § 1404(a). Sinochem's rationale has been extended to cases involving transfer of venue under § 1404(a). See Kazenercom TOO v. Turan Petroleum, Inc., Civil Action No. 08-1339 (ESH), 2008 WL 5272767, at *2 n.5 (D.D.C. Dec. 19, 2008) (stating that Sinochem supports deciding the motion to transfer venue under § 1404(a) before addressing issues of personal or subject matter jurisdiction); Cheney v. IPD Analytics, LLC, Civil Action No. 08-1044 (JDB), 2008 WL 4616888, at *5 (D.D.C. Oct. 20, 2008) (concluding that following Sinochem, the court could address a motion to transfer venue under § 1404(a) before addressing issues of personal jurisdiction); Focus Enters., Inc. v. Zassi Med. Evolutions, Inc., Civil Action No. 06-2068 (GK), 2007 WL

1577844, at *1 n.1 (D.D.C. May 31, 2007) (stating that because the case should be transferred to another district, the question of personal jurisdiction need not be addressed). "[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits'" and there is no "'mandatory sequencing of jurisdictional issues.'" In re LimitNone, LLC, 551 F.3d 572, 576 (7th Cir. 2008) (quoting Sinochem, 127 S. Ct. at 1191); see also Public Serv. Elec. & Gas Co. v. FERC, 485 F.3d 1164, 1171 (D.C. Cir. 2007) (citing Sinochem to support the proposition that it "need not reach the question of standing because our decision rests on a different 'threshold, non-merits' ground"). Adjudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists.

## II. ASSESSING VENUE

A case may be transferred to another venue under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). See also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). The moving party has the burden of establishing that a transfer is proper. Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006). As a threshold requirement, the transferee court must be in a district where the action "might have been brought." See 28 U.S.C. § 1404(a). If it is, then a court uses

its broad discretion to balance case-specific factors related to the public interest of justice and the private interests of the parties and witnesses. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). In the balancing, a "[p]laintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant." Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987); see also DeLoach v. Phillip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C. 2000). Ultimately, if the balance of private and public interests favors a transfer of venue, then a court may order a transfer.

A. Venue in the Northern District of Texas

Under 28 U.S.C. § 1391(e),

> [a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

The TSC Director resides in the Northern District of Texas. Moreover, the TSC oversees Aftab's adjustment of status application (Compl. ¶ 18), and has taken actions in processing Aftab's application by gathering evidence and fingerprints from

Aftab. (Id. ¶¶ 18-20.) Aftab has also had multiple contacts with the TSC regarding the status of his adjustment application. (Id. ¶ 21.) This action could have been brought, then, in the transferee district.

B. Private Interests

The private interest factors typically considered include: 1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof. Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32-33 (D.D.C. 2008).

The first three factors weigh in favor of transfer. A plaintiff's choice of forum is ordinarily accorded deference. Id. However, if a plaintiff is not a resident of the forum and "most of the relevant events occurred elsewhere," this deference is weakened. Hunter v. Johanns, 517 F. Supp. 2d 340, 344 (D.D.C. 2007); see also Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 6-7 (D.D.C. 1996) (stating in support of a transfer that "the material events that constitute the factual predicate for the plaintiff's claims occurred" in the transferee district).

Aftab is a resident of Texas and not the District of Columbia.[1] (Compl. ¶ 11.) While the claim arguably arose in more than one district, the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district. Aftab has had multiple contacts with the TSC regarding his application and has responded to its requests for additional evidence and fingerprints. (Id. ¶ 20.) And it is Genize Walker, an officer at the TSC who is located in the Northern District of Texas, who has been "delegated the authority to make declarations about the status of the Plaintiff's application and implement the procedures for processing background security investigations." (Defs.' Mem., Decl. of Genize Walker ("Walker Decl.") ¶¶ 1, 4-5; Compl. ¶¶ 18-19.) Aftab's choice of this district as a forum commands diminished deference.

Moreover, naming a cabinet secretary and agency directors does not alone anchor venue here. "Courts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia [because] [b]y naming high government officials as defendants, a plaintiff could bring a suit here that properly

---

[1] Aftab resides in Houston, Texas, which is in the Southern District of Texas.

should be pursued elsewhere." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

When "'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia.'" Al-Ahmed v. Chertoff, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (noting in a case where the plaintiff seeks to "compel action on his I-485 application for adjustment of immigration status, his I-131 application for a travel document, and his I-765 application for employment authorization" that "little, if any, of the activity giving rise to plaintiff's claims has occurred in the District of Columbia nor will it" because the named high level government officials do not adjudicate applications) (quoting Abusadeh v. Chertoff, Civil Action No. 06-2014 (CKK), 2007 WL 2111036, at *6-7 (D.D.C. July 23, 2007)). Courts in the District of Columbia have found venue to be proper when the agency official was personally involved in the decision making process. Greater Yellowstone Coal. v. Bosworth, 180 F. Supp. 2d 124, 128 (D.D.C. 2001), involved a challenge to the renewal of a cattle grazing permit for the Horse Butte Allotment ("HBA"), and the court noted that venue was supported because the plaintiff alleged that officials in Washington, D.C. were "involved in inter-agency discussions

regarding the reissuance of the HBA grazing permit." And, in The Wilderness Soc. v. Babbitt, 104 F. Supp. 2d 10, 14 (D.D.C. 2000), venue was proper in this district because Secretary Babbitt was personally and substantially involved in the matter by visiting the area at issue, meeting with interested parties, signing the record of decision, and briefing the public about his decision.

Aftab does not allege that the DHS Secretary or the FBI or CIS Directors were personally involved with the processing or adjudication of his application. Aftab asserts "the evidence suggests that the five year delay in Plaintiff's adjustment of status application and the necessary actions to move forward Plaintiff's application, must occur *outside* of Texas." (Pl.'s Opp'n to Defs.' Mot. to Dismiss or in the Alternative to Transfer ("Pl.'s Opp'n") at 31.) He also asserts that adjudication of applications is an issue of national policy (Compl. ¶ 9) and that the federal officials in this forum play an "active or significant role in the processing of background and security checks on cases such as the Plaintiff['s]." (Pl.'s Opp'n at 37 (internal quotation marks omitted).) Aftab relies on policy memoranda and reports by the defendants, but he neither points to any involvement by the DHS Secretary or the FBI or CIS Directors in his application nor challenges a general policy or regulation. (See id. at 39 (stating that "[t]he

action before this Court pertains solely to the Defendants' unreasonable delay in processing Plaintiff's application").) Cf. Akiachak Native Cmty. v. Dep't of Interior, 502 F. Supp. 2d 64, 67 (D.D.C. 2007) (stating that the plaintiff's choice of venue was given deference because the plaintiff challenged the validity of a regulation that was formulated through a rule-making process, which occurred in the District of Columbia).

Even if these officials had some involvement in policy decisions that affect Aftab, attenuated or insignificant involvement by an official in the District of Columbia does not support venue here. See Marks v. Torres, 576 F. Supp. 2d 107, 111 (D.D.C. 2008) (finding that "'mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C.[,] is not determinative'" of venue because there was no factual connection between the District of Columbia and the litigation other than the presence of federal agencies in the forum, and the interpretation and implementation of regulations occurred outside this district (citing Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002))); Sierra Club v. Flowers, 276 F. Supp. 2d 62, 68 (D.D.C. 2003) (stating that the plaintiff's choice of forum received less deference because there was a "lack of evidence that federal officials in [Washington, D.C.] played 'an active or significant role' in the decision to issue the permits"); Airport Working

Group of Orange County, Inc. v. U.S. Dep't of Def., 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (concluding that the fact that the record of decision was signed by a Department of Navy official in the District of Columbia did not support venue because "there [was] no evidence to suggest that these officials had an active or significant role in this matter" and "any role played by officials in the District of Columbia [was] overshadowed by the fact that their decisions were based on work done by government employees in California, public comments received from Orange County residents and organizations, and Orange County land use plans, zoning ordinances and regulations"); Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 18 (D.D.C. 1996) (concluding that the plaintiff's deference was weakened because the "decision-making process at both the forest and regional level occurred in Colorado, not in Washington, D.C."). The FBI may affect the processing of Aftab's application, but the FBI "does not adjudicate applications" and "generally provides a summary of available information to the USCIS for its adjudicative process." (Defs.' Mem., Decl. of Michael Cannon at 15;) see also Abusadeh, 2007 WL 2111036, at *7 (concluding that venue was not proper in D.C. even though the FBI was conducting a name check because while "the FBI, in Washington, D.C., may play a role in the processing of Plaintiff's application for naturalization[, this] does not alter the fact that the ultimate

decision on Plaintiff’s application for naturalization - the sole decision challenged in Plaintiff’s Complaint - will be made at the USCIS office Houston, Texas”). While Aftab argues that other CIS offices outside of transferee district have caused the delay, none was in this district and the one responsible for roughly the last two years for any ongoing delay is in the Northern District of Texas. (Compl. ¶ 18.)

In sum, the plaintiff’s choice of this forum is entitled to less deference and the Texas forum urged by the defendants is the locus of substantially more events underlying plaintiff’s claim than is the District of Columbia. See Barham v. UBS Fin. Servs., 496 F. Supp. 2d 174, 179 (D.D.C. 2007) (noting that even though the management decisions may have been made by managers in the District of Columbia, the plaintiff’s forum was given less deference because the defendants’ discriminatory actions occurred in the Maryland office); Airport Working Group of Orange County, Inc., 226 F. Supp. 2d at 231 (finding that when the connection between the controversy, plaintiff, and the forum are attenuated and lack a meaningful factual nexus, less deference is given).

Regarding the remaining three private interest factors, the defendants assert that the Northern District of Texas would be more convenient because the people involved in making a determination are located in the transferee district and the

plaintiff resides in Texas. (Defs.' Mem. at 25; Defs.' Reply in Supp. of Mot. to Dismiss, or in the Alternative, for Transfer, Suppl. Decl. of Genize Walker ¶¶ 1, 3.) Aftab contends that the convenience of witnesses or parties should carry little weight in a case involving review of an administrative agency action and that even if given weight, the Northern District of Texas is not more convenient. (Pls.' Opp'n at 38-41.)

Neither side complains that either forum is inconvenient to any party. In a case involving review of an agency action, "the location of witnesses is not a significant factor," but "[t]he location of the administrative record, however, carries some weight[.]" Sierra Club, 276 F. Supp. 2d at 69. Although not a strong consideration, potential witnesses, if any, could include TSC employees involved in processing or deciding Aftab's application. See Abusadeh, 2007 WL 2111036, at *8 (stating that "to the extent that any relevant witnesses and documents exist, they will be the individuals involved in making the ultimate decision on Plaintiff's application for naturalization as well as the documents and records related to his application, all of which are located in the [transferee district]"). No issue has been raised, though, about any witness's potential unavailability in any forum. Finally, while the TSC has approximately two million active files (Walker Decl. ¶ 5), the defendants do not affirmatively state that the administrative

records or documents pertaining to Aftab's application are located in the transferee district. Given the nature of Aftab's claim, it is unlikely that a transfer would materially affect the convenience of the parties or witnesses, or the ability to obtain sources of proof. On balance, these final three private interest factors favor neither side.

C. Public Interests

The public factors usually weighed in considering a motion to transfer include: 1) the transferee's familiarity with the governing laws; 2) the relative congestion of each court; and 3) the local interest in deciding local controversies at home. Liban v. Churchey Group II, L.L.C., 305 F. Supp. 2d 136, 143 (D.D.C. 2004).

The transferee district is presumed to be equally familiar with the federal laws governing Aftab's claims. Al-Ahmed, 564 F. Supp. 2d at 20 (stating that both federal courts are "equally familiar" with federal law). This factor is neutral. The defendants argue that cases are resolved more quickly in the Northern District of Texas than in the District of Columbia. (Defs.' Mem. at 25-26.) In comparison to the District of Columbia, the Northern District of Texas has a lower median time from filing to diposition, but has a larger total case load. (Defs.' Mem., Ex. 5, U.S. District Court - Judicial Caseload Profile at 1-2.) Even if it is assumed that Aftab's case might

proceed more quickly in the Northern District of Texas, the difference is relatively minor and this factor would favor transfer only slightly.

Finally, Texas has a stronger local interest in this case than does the District of Columbia. See Abusadeh, 2007 WL 2111036, at *8 (stating that in a case involving the processing of the plaintiff's application for naturalization, the rationale that "'[t]here is a local interest in having localized controversies decided at home'" extends "'to controversies involving federal decisions that impact the local environment, and to controversies requiring judicial review of an administrative decision'" (quoting Sierra Club, 276 F. Supp. 2d at 70) (emphasis omitted)).

> To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official.

Otay Mesa Property L.P. v. U.S. Dep't of Interior, Civil Action No. 08-383 (RMC), 2008 WL 4767998, at *4 (D.D.C. Nov. 3, 2008). Because the TSC has taken some actions related to Aftab's application and has been delegated the authority to make a decision while the defendants in the District of Columbia have

not had any personal involvement, and because Aftab does not challenge an agency regulation or policy, the material facts are more connected to Texas than the District of Columbia. Aftab seeks relief that ultimately involves a determination of whether the TSC should be compelled to adjudicate his adjustment of status application without further delay. See Abusadeh, 2007 WL 2111036, at *8 (finding that the transferee district is "better positioned" to be involved in "dictating the priorities of a local USCIS office" and "may have a superior interest in doing so"). This factor tips slightly in favor of transfer.

Thus, although venue may lie in the District of Columbia, the balance of public and private interests favors a transfer to the Northern District of Texas, and the defendants' motion will be granted only insofar as it seeks a transfer of venue. See Kazenercom TOO, 2008 WL 5272767, at *8 n.17 (leaving to the transferee court the defendants' motions to dismiss since the case was being transferred).

CONCLUSION AND ORDER

The balance of public and private interest factors favors transfer of this case to the Northern District of Texas. Accordingly, it is hereby

ORDERED that defendants' motion [15] to dismiss or in the alternative, transfer venue be, and hereby is, GRANTED IN PART. The request to transfer venue is granted. The Clerk is directed

to transfer this case to the United States District Court for the Northern District of Texas.

SIGNED this 17th day of February, 2009.

/s/

RICHARD W. ROBERTS
United States District Judge